# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER O'NEAL,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.  1:23-cv-00619-TLN-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING THIS ACTION FOR FURTHER PROCEEDINGS<br><br>(ECF Nos. 10, 14, 15)<br><br>OBJECTIONS DUE WITHIN FOUREEN DAYS |

## I.

## INTRODUCTION

Christopher O'Neal ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. Plaintiff requests the decision of Commissioner be vacated and the case be remanded for payment of benefits, or in the alternative, further proceedings, arguing the administrative law judge did not properly evaluate his symptom testimony and failed to address later evidence in the record.

The matter was referred to a United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 and is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.  For the reasons set forth below, the Court recommends Plaintiff's motion for summary judgment be granted and this action be remanded for further proceedings.

## II.

## BACKGROUND

### A.     Procedural History

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on November 9, 2020.  (AR 72.)  Plaintiff's application was initially denied on February 3, 2021, and denied upon reconsideration on June 8, 2021.  (AR 93-6, 100-04.)  Plaintiff requested and received a hearing before Administrative Law Judge Shiva Bozarth ("the ALJ").  Plaintiff appeared for a telephonic hearing on February 24, 2022.  (AR 35-57.)  On May 22, 2022, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 17-29.)  On February 21, 2023, the Appeals Council denied Plaintiff's request for review.  (AR 1-3.)

### B.     The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, May 22, 2022:

1.  Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024.

2.  Plaintiff has not engaged in substantial gainful activity since December 12, 2019, the alleged onset date.

3.  Plaintiff has the following severe impairment: degenerative disc disease status post fusion.

4.  Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

5.  After careful consideration of the entire record, the ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b). Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. He can occasionally climb ramps, stairs, ladders, ropes and scaffolds, and occasionally balance, stoop, kneel, crouch and crawl.  Plaintiff needs to change positions once per half hour for up to a minute while remaining at the workstation.

6. Plaintiff is unable to perform any past relevant work.

7. Plaintiff was born on January 29, 1978, and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. Plaintiff has at least a high school education.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills.

10. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

11. Plaintiff has not been under a disability, as defined in the Social Security Act, from December 12, 2019, through the date of this decision.

(AR 22-29.)

**III.**

**LEGAL STANDARD**

**A.    The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[1] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in

---

[1] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[2] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only disability insurance benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[3]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine

---

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1   residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

2        At step five, the burden shifts to the Commissioner, who must then show that there are a

3   significant number of jobs in the national economy that the claimant can perform given her RFC,

4   age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d

5   1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines

6   ("grids") or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry,

7   468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-

8   step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical

9   testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala,

10  53 F.3d 1035, 1039 (9th Cir. 1995)).

11       **B.   Standard of Review**

12       Congress has provided that an individual may obtain judicial review of any final decision

13  of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

14  determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

15  the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

16  Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

17  the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

18  405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

19  evidence which, considering the record as a whole, a reasonable person might accept as adequate

20  to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting

21  Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson

22  v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential

23  clearly erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high."  Biestek,

24  139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a

25  preponderance; it is an extremely deferential standard."  Thomas v. CalPortland Co. (CalPortland),

26  993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v.

27  Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse

28  the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden

1  of showing that an error is not harmless "normally falls upon the party attacking the agency's

2  determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

3      Finally, "a reviewing court must consider the entire record as a whole and may not affirm

4  simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153,

5  1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

6  Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may

7  review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th

8  Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not

9  this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

10  for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

11  the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

12  400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**DISCUSSION AND ANALYSIS**

15      Plaintiff contends that the main reason he is unable to work stems from the pain he suffers

16  due to several back surgeries. Plaintiff asserts that his pain causes him to need to take extra time to

17  complete tasks and requires extra breaks. Plaintiff argues that it is clear from his symptoms that he

18  cannot find employment. (Pl.'s Motion for Summary Judgment ("MSJ") 6,[4] ECF No. 10-1.)

19  Plaintiff states that the ALJ provided no detailed discussion of the pain analysis or facts that would

20  be clear and convincing to disregard his pain testimony. Plaintiff further asserts that the ALJ did

21  not provide a single statement as to why he believes Plaintiff's statements are not entirely consistent

22  with the medical evidence and other evidence in the record. (MSJ 11.)

23      Plaintiff argues that the ALJ's discussion of the medical evidence and his daily activities is

24  insufficient as it lacks any discussion of how the medical findings and daily activities are

25  inconsistent with his pain testimony. Plaintiff asserts that the ALJ did not identify what testimony

26  he found not to be credible, nor did he explain what evidence undermined Plaintiff's statements.

---

[4] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1    Plaintiff asserts this is legal error and requires the action to be remanded at the very least.  (MSJ

2    11.)   Plaintiff contends that the Ninth Circuit requires that the ALJ make a showing that the

3    particular activities of daily living are transferrable to a work setting and the ALJ did not provide

4    any argument that the identified activities of daily living are transferable to a work environment.

5    Further, Plaintiff argues that his daily activities are not inconsistent with his testimony.  (MSJ 13.)

6        Plaintiff also argues that the medical record is not inconsistent with his pain testimony.

7    Further, Plaintiff asserts that the ALJ provided no discussion as to the extent that he performs his

8    daily activities.  (MSJ 12.)

9        Defendant counters that the ALJ's evaluation of Plaintiff's subjective complaints was a

10   reasonable interpretation of the record and meets the substantial evidence standard of review.

11   (Def.'s Responsive Brief ("Opp") 5, ECF No 14.)   Defendant argues that the ALJ properly cited to

12   the objective medical evidence, improvement after physical therapy and surgery, Plaintiff's use of

13   modest pain medication, his reported activities, and a statement by a medical source.  (Opp. 6.)

14   Defendant contends that the evidence cited by the ALJ supports his overall interpretation of the

15   record, that while Plaintiff continued to have some symptoms, he retained the ability to perform

16   light work with the ability to change positions for one minute at half hour intervals.  (Opp. 7.)

17       Defendant asserts that the ALJ sufficiently "showed his work" for the Court to perform a

18   judicial review.  (Opp. 7.)   Further, Defendant argues that the medical evidence the ALJ cites is

19   probative evidence and properly considered under the regulations.  Defendant asserts that the ALJ

20   considered Plaintiff's asserted activities, his interpretation of the record was reasonable, and the

21   ALJ's evaluation of Plaintiff's subjective complaints was legally and factually sufficient.  (Opp. 8.)

22       Plaintiff replies that Defendant cannot supplement the ALJ's credibility determination and

23   must stand on the decision as written by the ALJ.   Plaintiff argues that the ALJ's credibility

24   determination is improper and does not rise to the level of "clear and convincing."  Plaintiff contends

25   that the ALJ merely recited the medical record and vaguely asserted that Plaintiff's testimony was

26   unsupported without some discussion of how his statements were inconsistent.  Plaintiff additionally

27   argues that the ALJ merely recited his daily activities without any discussion of how they are

28   inconsistent with his testimony or how they are related to work activity.   (Reply 2, ECF No. 15.)

**A.    Claimants Subjective Complaints**

A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").  Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.  In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.  Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

In addition to the medical evidence, factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th

Cir. 2007); Smolen, 80 F.3d at 1284.  Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  SSR 16-3p, at *5.

      1.   <u>Plaintiff's Testimony</u>

      **a.**    **Pain Questionnaire**

Plaintiff completed a pain questionnaire on December 6, 2020.  (AR 362-64.)  He has pain in his low back that began in 2017.  He has stiffness, and aching sharp pain that spreads to his lower legs.  He has no pain in other areas due to nerve damage.  His pain occurs every day.  Lifting, bending, sleeping, sitting, or standing bring on his pain and it lasts for hours.  He relieves his pain by sitting in a reclined position and using a heating pad.  Sometimes the pain does not resolve.  He takes Ibuprofen or Tylenol for his pain as needed.  He has been using the Ibuprofen and Tylenol for years and it makes his pain bearable.  (AR 362.)  He has no side effects from his medication.  His pain is permanent, along with leg numbness and weakness.  He also uses his spa to relieve pain.  He is able to walk, shop, do household chores, drive, and socialize, he is just slower.  He used to be able to lift heavy objects.  His pain started in 2007.  (AR 363.)

Most of the day, Plaintiff has to stop an activity because of pain.  He is able to run errands without assistance.  He can walk two miles, stand for a couple hours, sit for an hour at a time before being in pain, drive a car, and do light housekeeping without assistance.  (AR 364.)

      **b.**    **Relevant hearing testimony**

Plaintiff testified at the February 24, 2022 hearing.  (AR 42-53.)  Plaintiff last worked in December 2019 as a paramedic. (AR 42.)  Plaintiff lives in a house with his wife and three children.  He prepares meals ranging from steaks to cereal.  (AR 43.)  He likes to look at recipes and try to make things.  When he is standing, his back will lock up or start cramping and his leg might lock up and go numb.  He can stand from fifteen minutes to half an hour.  At times he can stand longer.  Sometimes his back is good and then there are days when he sits on a heating pad.  (AR 44.)  He will use a heating pad four or five times a day and sleeps on one at night.  Plaintiff can be in a single

position for fifteen to twenty minutes and keeps adjusting.  Sometimes his right side will go numb, and he will turn to the left side.  (AR 48.)

Plaintiff does the grocery shopping.  He can have difficulties bending down if he needs to get something off the lower shelves and he will use the cart for support.  (AR 44.)  When he has to bend, he bends at the knees.  He has pain and stiffness if he tries to bend at the waist.  His pain is in his lower back and sometimes it radiates to both legs.  The pain can radiate as far as the ankle, but usually it stays on the outside of the calf, down the outside of his leg.  He is able to tolerate reaching to get something off the top shelf.  (AR 45.)  Plaintiff could potentially have pain in his lower back or shoulders if he was reaching to get something off the top shelf.  (AR 45-6.)  Plaintiff is able to drive a car.  He does his own laundry, but getting things from the washer to the dryer increases his pain.  They have a stackable washer and putting items into the washer causes him pain and sometimes putting things in the dryer can cause him pain depending on the day.  (AR 46.)

During the day, Plaintiff will do a few things and then relax.  He will use a heating pad and get in the spa to try to relieve the pain.  When he needs to relieve his pain, he will sit in a reclined position.  His doctor told him not to sit for too long, not to stand for too long, and not to walk for too long.  (AR 47.)  They told him to relax and try not to do too much for the rest of his life.  The length of sitting or standing depends on his pain tolerance.  If is it painful to sit he is to stand, if it is painful to stand he is to sit.  The doctor told him he can lift 70 pounds, but not to stretch that.  (AR 48.)

Plaintiff can shower and can bend a little bit, but he usually does not wash below his knees.  Wiping himself is a weird process.  Plaintiff has a gardener to do the yard but does light tree trimming on the bushes.  He needs to do more but does not do too much at any one time.  He will work and then rest, and then go out for another half hour or hour.  Plaintiff can push the vacuum because it is not on carpet.  (AR 49.)

Plaintiff did not get any improvement with mobility or pain with his back surgery.  (AR 49-50.)  Plaintiff was asked if he could work at a job where he could alternate between sitting and standing eight hours a day five days a week.  Plaintiff stated currently he knows that if he is doing a task he can go rest, sit down and does not have to think about anything even if the whole day is

gone.  At a job, it would be hard to continue if he knows that he had another eight hours and could not go into complete shutdown mode.  Even if Plaintiff could switch back and forth, he would have to take more pain medication to make it through an entire day which he is trying to avoid.  (AR 50.)

Plaintiff's recent fracture was his own fault.  He was trying to get some things out of the attic and did not feel like moving the ladder.  The hatch got locked so he went up and blocked it and did not want to come back down on the ladder.  He pulled it and when he tried to get on the top step the ladder fell.  He was trying to get down boxes of Halloween decorations.  The only lasting symptom is that his ankle feels like it is sprained all the time.  He was told the pain should subside, but he still has swelling.  His ankle is twice the size and gets more swollen when he is on it.  But he sits when it swells.  (AR 51.)

Plaintiff would love to go back to work.  He just does not know what work would be accommodating, such as sitting in a chair for a few minutes and then his back starts hurting, he does not feel most of his lower left leg and sometimes it locks up and then pops out.  If he stretches out his leg it starts cramping immediately.  He has a lot of numbness from his back down his leg and he will notice injuries to his leg that he has no idea how they occurred.  He would love to figure out a job and go back to work.  He just does not know who would have him back with all his back issues.  The reason he does not have a lot of pain in his legs is that he does not feel a lot of his lower limbs.  He could put a knife in one leg and not even feel it.  If he sits for five minutes his back is on fire.  Just driving down the street his back is on fire.  When they take a trip, he has to take four Ibuprofen or Tylenol, and must stretch.  He does not sleep much because he must reposition every hour.  (AR 52.)

The doctor told him no weightbearing for three months, but he is getting back.  He is doing some light cardio and getting back to stretching again so he can use his left leg and ankle.  (AR 53.)

2.   Analysis

In his opinion, the ALJ considered the following testimony from Plaintiff.

During the February 2022 telephonic hearing, the claimant testified he lived with his wife and three children.  He researched recipes to make complete meals, including steak.  However, he reported some difficulty cooking due to his back locking up or his legs feeling numb and weak.  The claimant was able to stand for 15-30 minutes at a

time, could grocery shop unassisted if he leaned on the cart, and could reach overhead without issue. The claimant testified that his back pain occasionally radiated down his right leg. He sat in a recliner with a heating pad 4-5 times a day to relieve his back pain, but frequently adjusted his position to stay comfortable. H[e] did not sleep well, but was able to do some light trimming of the bushes, vacuum his home, and believed if he took more pain medication he might be able to get though an 8-hour workday. He also explained that he fell off a ladder while getting boxes of Halloween decorations down and fractured his left ankle. The claimant reported his left ankle continues to occasionally swell and he intermittently experiences left leg numbness (Hearing Transcript).

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR 25.)

### a.    Inconsistency with the medical record

The ALJ went on to discuss the medical record. (AR 25-6.) Prior to Plaintiff's alleged onset date of disability, he had a lumbar fusion from L4-S1. (AR 25, 414.) The ALJ stated that although Plaintiff initially noticed improvement in his back pain and lower extremity weakness, his symptoms returned. In May 2019 a lumbar spine MRI indicated posterior fixation extending from L4-S1, fracture through the right L4 pedicle screw, asymmetric disc collapse at L3-4, decreased lordosis, and mild kyphosis at L3-4. (AR 25, 416.) Plaintiff was diagnosed with adjacent segment disease, lumbar stenosis, lumbar radiculopathy, and hardware failure. (AR 25, 416, 605.) On August 19, 2019, removal and exploration of fusion from L4-S1 with transforaminal lumbar interbody fusion and correction of the spinal deformity was recommended by neurosurgeon Henry E. Aryan, M.D. (AR 25, 416). Despite being advised that the longer he holds off the less likely his leg was to improve with surgery, Plaintiff wanted to hold off on the surgery until closer to December due to his work schedule. (AR 416.)

On December 16, 2019, Plaintiff underwent a successful transforaminal lumbar interbody fusion L3-4, posterior spinal fusion L3-5 with internal fixation, and revision. Plaintiff was prescribed pain medication and discharged home in stable condition on December 18, 2019. (AR 26, 410.) Plaintiff was advised to wear a lumbar brace for six weeks and to avoid bending, lifting and twisting for three months. (AR 26, 605-06.)

Plaintiff started physical therapy on February 11, 2020.  (AR 26, 442.)  Throughout therapy, Plaintiff tolerated treatment without any adverse events and was able to add exercise well without symptom exacerbation (AR 26, 444, 445, 448, 450, 452, 454, 456, 458, 459, 462, 466, 468, 470, 472, 481, 482, 483, 484), and developed good truck control (AR 26, 481).  Although Plaintiff reported some numbness and weakness in his left lower leg, overall, he confirmed improvements in his functional mobility since starting physical therapy.  (AR 26, 490.)  Plaintiff completed physical therapy on March 20, 2020.  (AR 26, 471, 515.)

The ALJ noted that Plaintiff continued to endorse some back pain and residual numbness in his legs (AR 26, 615.)  However, throughout 2020, the record consistently documented a normal gait during ambulation.  (AR 26.)  The ALJ noted the following records to support his finding.

On March 27, 2020, Plaintiff was seen in the emergency room complaining of urinary retention and abdominal pain.  (AR 567.)  Examination notes that his gait is normal, and he moves all extremities.  Musculoskeletal examination notes normal range of motion and strength with no tenderness or swelling.  (AR 568.)  He was diagnosed with renal colic.  (AR 567.)

Plaintiff was seen on March 31, 2020, for a consultation regarding kidney stones.  (AR 595.)  Musculoskeletal examination notes he spontaneously moves all extremities with full passive and active range of motion in all limbs.  He has 5/5 muscle strength in the upper and lower extremities.  There is no limb or joint deformities seen and gait is normal.  (AR 596.)

On April 3, 2020, Plaintiff was seen for a preoperative appointment complaining he was still having pain from the stone.  (AR 592.)  Examination findings remain the same.  (AR 593.)

On April 17, 2020, Plaintiff had a post operative appointment following a bilateral ureteroscopy, laser lithotripsy, and stent insertion on April 6, 2020.  (AR 588.)  Examination findings remain the same.  (AR 590.)

Plaintiff was seen on May 7, 2020, for his five month post operative appointment following his back surgery.  Plaintiff reported that physical therapy went reasonably well, although he still has some pain and difficulty doing bridges.  When he sits or stands for too long, he will have some pain in his low back.  He also reported some residual numbness in different areas of both legs. He also reported occasional pain in the right leg as well.  He reported to be slowly increasing his daily

1  activities and was doing some yard work.  (AR 615.)   Examination notes that he ambulates with a

2  normal gait.  The incision along the midline of the lumbar spine is nontender to palpation and has

3  healed nicely so far.  Strength testing in the lower extremities was approximately 5/5 diffusely.

4  (AR 617.)  There was a discussion regarding his ability to return to work as a EMT and he was

5  advised that line of work would put him at a higher risk of things wearing out again and possibly

6  requiring a subsequent surgery.  Plaintiff understood that he may have to look for a new line of

7  work.  He was likely to have some residual numbness in his leg and due to the flat back would most

8  likely always have some residual back pain.  (AR 617.)

9      Plaintiff was seen on May 8, 2020, for a follow up after removal of his stent.  (AR 710.)

10  Musculoskeletal examination notes he spontaneously moves all extremities with full passive and

11  active range of motion in all limbs.  He has 5/5 muscle strength in the upper and lower extremities.

12  There is no limb or joint deformities seen and gait is normal.  (AR 712.)

13      The ALJ also noted that Plaintiff presented with an obese body habitus, weighing 257

14  pounds with a BMI exceeding 31.  (AR 26.)  Plaintiff was seen on September 15, 2020, for a follow-

15  up on his medication and blood pressure.  He was noted to weigh 248 pounds with a BMI of 31.62.

16  Examination notes that he appears well and is not in distress. Examination is unremarkable.  (AR

17  632.)

18      On January 15, 2021, Plaintiff was seen for a follow-up on a sleep study.  He is found to

19  weigh 257 pounds with a BMI of 32.77.  Examination notes his appears well, not in distress, and

20  alert and oriented.  (AR 693.)

21      The ALJ also considered that on November 6, 2020, nearly one year status post lumbar

22  fusion, Plaintiff was advised he could return to work but should not lift more than 75 pounds.  (AR

23  26.)  Plaintiff was seen 11-month status post hardware removal.  He was still having aches and

24  pains but had been making progress.  The record notes that there had been some discussion about

25  whether he could return to work as a paramedic, and the physician advised against it.  Plaintiff was

26  increasing his activities around the house.  He still has aches and pains, especially if he is overactive

27  and has some residual numbness in the lower extremities.  The appropriateness of him returning to

28  work was discussed and Plaintiff reported that his place of work was going to accommodate him

with some less physically demanding work.  (AR 619.)  On examination, Plaintiff is noted to be in no apparent distress.  He ambulated with a normal gait.  His incision was well healed, and the area was nontender to palpation.  Strength testing in the lower extremities was 5/5 diffusely.  (AR 621.)  Dr. Kunz stated,

> Again, he is one year out from surgery and is now fused from L3 to S 1.  Again, the role of a paramedic can be quite unpredictable and can involve lifting very heavy patients at times.  That being the case, overall my recommendation is for him not to return to work in the same capacity.  While he is rather large in stature and likely has greater strength than the average individual, I would still prefer he not be lifting more than 75 pounds long term in order to maintain the structural integrity of his spine.  We certainly do not want further adjacent segment disease to develop and neither does he.  It would be ideal if his place of work can indeed retrain him in a different role with less physical demands and less unpredictability.  He has come to terms with that likelihood and will pursue it.  It sounds like he has some options, which is great.  I have provided him a work note stating that he is able to return back to work.  No lifting more than 75 pounds and to please provide periodic breaks from sitting and standing as needed.  He can otherwise continue to increase his activity levels as tolerated.  In many ways, how much he lifts is not as important as how he lifts it.  He will always need to take care of his back and exercise caution.  He understands these things.

(AR 621-22.)

The ALJ also considered an associated lumbar spine x-ray showed minimal list to the right, instrumentation extending from L3-L5 with PEEK spacers within the disc spaces.  On lateral view, there is loss of lumbar lordosis with flat back.  (AR 621.)

The ALJ went on to address the prior administrative findings in the record.  On January 14, 2021, Dr. Kiger, a state agency medical consultant, reviewed the record and opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday.  He can occasionally climb ramps, stairs, ladders, ropes and scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl.  (AR 26, 66-7.)  Upon reconsideration, on June 7, 2021, Dr. Linder, a state agency medical consultant, also reviewed the medical record and affirmed Dr. Kiger's findings.  (AR 26, 82-3.)  The ALJ concluded the opinions were persuasive, as the longitudinal record is consistent with and supports the limitations opined.   (AR 26-27.)  As an example, the ALJ noted that the recent objective imaging from November 2020, demonstrated the August 2019 lumbar spine fusion was successful and the instrumentation was stable.  (AR 27, 621.)

However, the Court agrees with Plaintiff that nowhere in the opinion does the ALJ link the medical findings to any statement by Plaintiff regarding his inability to work.  Defendant argues that substantial evidence supports the ALJ's decision as Plaintiff was alleging disability due to his back impairment and treatment for the impairment ended in November 2020.  (Opp. 8.)  Further, Defendant argues that the ALJ's decision is well supported by the opinions of the state agency physicians.  (Opp. 9.)  The issue raised by Plaintiff here is not that the opinion lacked the support of substantial evidence, but that the ALJ committed legal error by failing to provide clear and convincing reasons to reject his symptom testimony.

To reject the claimant's symptom testimony, the ALJ must provide "specific clear and convincing reasons for the rejection."  Ghanim, 763 F.3d at 1163 (quoting Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir.2009)); Garrison, 759 F.3d at 1015; Lingenfelter, 504 F.3d at 1036; Smolen, 80 F.3d at 1281; Robbins, 466 F.3d at 883.  Here, after finding that Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms, the ALJ stated "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 25.)  The ALJ then went on to discuss the medical evidence without including any reasons why the medical evidence was inconsistent with Plaintiff's symptom complaints.

The Ninth Circuit has held that "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination."  Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015).  The ALJ is required to set forth his reasoning behind the decision in a manner that allows for meaningful review.  Brown-Hunter, 806 F.3d at 492.  Where the ALJ fails to specify his reasons for finding a claimant's testimony not credible, the court is "unable to review those reasons meaningfully without improperly 'substitut[ing] our conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions."   Id. (quoting Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir.2014)).  Since the court cannot engage in this kind of improper substitution or speculation, the error will usually not be harmless.  Brown-Hunter, 806 F.3d at 492.

Here, the ALJ did not identify any inconsistencies between Plaintiff's testimony and the objective medical evidence.  Rather, the ALJ merely stated that Plaintiff's testimony was inconsistent for the reasons explained in the decision and then recited the medical evidence.  The ALJ never identified which of Plaintiff's statements were inconsistent with the medical evidence.  The recitation of the medical is insufficient for the Court to conduct a meaningful review of the adverse credibility finding.  While the medical evidence may reasonably be used to reject Plaintiff's symptom testimony, it is for the ALJ to identify the inconsistencies between Plaintiff's testimony and the medical findings and the ALJ did not do so here.

### b.    Daily activities

Defendant argues that the ALJ properly considered Plaintiff's own report of his ability and activities to find that he was able to do light work consistent with the RFC.  (Opp. 7.)  "An ALJ may [] consider whether the claimant engages in activities inconsistent with the alleged symptoms."  Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).  Ninth Circuit caselaw demonstrates that activities of daily living may be grounds for discounting allegations that an impairment is so severe it is totally debilitating, even if such activities are not directly transferrable to a work setting.  See Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2012), superseded by regulation on other grounds (noting "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferrable to a work setting … Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (internal citations omitted); see also Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (affirming the ALJ's decision where the claimant's allegations were inconsistent with activities of personal care, shopping, chores, riding public transportation, and driving); Burch, 400 F.3d at 680 (finding the ALJ properly discounted the claimant's allegations where the claimant's activities suggest higher functionality, including caring for personal needs, cooking, cleaning, shopping, and interacting with family).

There are two grounds to use daily activities for an adverse credibility finding.  Orn, 495 F.3d at 639.  First, daily activities can form the basis of an adverse credibility determination if the claimant's activity contradicts his testimony.  Id.  Secondly, "daily activities may be grounds for an adverse

credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.' " Id. (quoting Fair, 885 F.2d at 603).  To reject a claimant's statements due to activities demonstrating the ability to work, ALJ must make specific findings as to the daily activities and their transferability to conclude that the claimant's daily activities warrant an adverse credibility determination.  Orn, 495 F.3d at 639.

Here, the ALJ found that although Plaintiff endorsed some difficulty lifting heavy objects, he can walk two miles and can stand for a couple of hours at a time, and sit for one hour at a time. (AR 26, 27, 363-364.)  The ALJ also considered that Plaintiff was able to walk, shops, does chores, and drives himself.  (AR 26, 27, 363.)  "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."  Ghanim, 763 F.3d at 1165; Orn, 495 F.3d at 639.  However, the ALJ did not discuss how Plaintiff's daily activities were inconsistent with his symptom testimony, nor did he make any findings as to Plaintiff's daily activities and their transferability to a work setting.  Accordingly, the Court cannot determine why the ALJ found that Plaintiff's daily activities were inconsistent with his testimony to allow for meaningful review.

### c.   Treatment following surgery

Defendant argues that the ALJ found that Plaintiff improved with physical therapy following his back surgery and his pain was effectively controlled with Ibuprofen or Tylenol.  (Opp. 14.)  The ALJ did note Plaintiff had a successful back surgery on December 16, 2019.  (AR 26.) The ALJ also found that Plaintiff confirmed improvements in his functional mobility with physical therapy (AR 26), and that Plaintiff reported he continued to have back pain, but over-the-counter medications were effective in controlling it (AR 26, 27, 50, 52, 362).

Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the impairment.  Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007); see also Casey v. Colvin, 637 F. App'x 389, 389–90 (9th Cir. 2016) ("It is permissible for the ALJ to rely on the claimant's conservative pain treatment regimen as evidence that his pain is not as severe as he describes."); Christina E. S. v. Saul, No. 2:19-CV-00557-JDE, 2020 WL 868604, at *5 (C.D. Cal. Feb. 21, 2020) ("An ALJ may properly discount symptom testimony at odds with conservative treatment.")

Although the ALJ discussed in the opinion that Plaintiff's surgery was successful, he made improvement with physical therapy, and that his pain was effectively controlled with over-the-counter medication; the ALJ made no finding that Plaintiff's treatment for his back pain was limited or conservative following surgery such that the Court could determine this was the basis to reject Plaintiff's symptom testimony.

Based on the foregoing, the Court finds that the ALJ erred by failing to provide specific, clear and convincing reasons to reject Plaintiff's symptom testimony.

### B.    Failure to Consider Later Records

Plaintiff also argues that the RFC is not supported by substantial evidence because the ALJ did not consider any records from 2021 forward.  (Mot. 14.)  Defendant responds that the ALJ did consider records in 2021, as he cited to a January 2021 record which noted that Plaintiff fractured his ankle/foot and found it was not a severe impairment as it was not expected to persist for 12 months.  (Opp. 9.)

Plaintiff alleges that the ALJ erred by cherry-picking evidence to discount Plaintiff's symptom testimony pointing to the following records.  (Mot. 14.)  Plaintiff was seen on December 27, 2021, for a physical therapy evaluation regarding pain in his right foot.  (AR 767.)  He reported pain of 5/10; extreme difficulty running and hopping; quite a bit of difficulty putting on his shoes and socks, performing heavy activities around his home, walking a mile, and sitting for an hour; moderate difficulty in his usual activities, hobbies, getting into and out of the bath, squatting, getting into and out of the car, going up or down a flight of steps, and standing for an hour; a little bit of difficulty lifting objects from the floor, performing light activities around the house, walking two blocks, and rolling over in bed.  (AR 767-68, 771.)

Plaintiff was seen on January 18, 2022.  (AR 765.)  He reported pain of 5/10; extreme difficulty running and hopping; quite a bit of difficulty sitting for an hour; moderate difficulty in his usual activities, hobbies, squatting, performing heavy activities around his home, and walking a mile; a little bit of difficulty getting in and out of the bath, walking between rooms, putting on his shoes and socks, lifting objects from the floor, performing light activities around the house, getting in and out of the car, walking two blocks, going up or down a flight of stairs, standing for an hour,

1   and rolling over in bed.  (AR 765-66.)  On this date, physical therapy sent a recertification note.

2   (AR 775-79.)  Plaintiff was still in a walking boot after falling off a ladder and fracturing his fibula

3   and metatarsal.  He was limited in walking, standing, and squatting due to pain.  (AR 775-76.)  He

4   was unable to complete leg squats due to pain and/or weakness.  (AR 777.)  The assessment notes

5   that he has increased pain free range of motion and tolerance standing and walking, but balance is

6   still compromised due to pain.  (AR 778.)

7       However, the ALJ considered Plaintiff's foot fracture in finding the impairment was not

8   severe.

9       On October 26, 2021, the claimant fell off a ladder while getting boxes of Halloween
        decorations down, and fractured his left ankle and left fibula [AR 51, 745].  He was
10      diagnosed with nondisplaced fracture of fifth metatarsal bone, left foot, with routine
        healing and nondisplaced fracture of lateral malleolus of left fibula, with routine
11      healing.  [AR 745.]  The claimant was prescribed a walking boot and also referred
        out to physical therapy, three times per week for a total of six weeks [AR 740, 782].
12      Initially, the claimant reported pain, swelling, and weakness in the left leg and ankle,
        with gait and balance instability, secondary to functional weakness [AR 740].
13      However, after completing physical therapy in March 2022, the claimant's left lower
        extremity demonstrated a good range of motion, his muscle strength was improved,
14      and he had very little pain [AR 793].

15   (AR 23.)

16      Plaintiff argues that the discussion of the records of Plaintiff's ankle fracture is not

17   sufficient, and the ALJ failed to discuss the medical records from 2021 and claims error.  However,

18   Plaintiff has not demonstrated that any probative evidence was not considered.  The Ninth Circuit

19   has repeatedly held that an ALJ is not required to discuss all evidence that is presented, but only

20   must explain why "significant probative evidence has been rejected."  Vincent v. Heckler, 739 F.2d

21   1393, 1395 (9th Cir. 1984) (quoting Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981)); Kilpatrick

22   v. Kijakazi, 35 F.4th 1187, 1193 (9th Cir. 2022).  This "significant probative evidence" standard

23   applies in a variety of contexts in which a claimant contends that an ALJ erred in not addressing a

24   given argument or piece of evidence.  Kilpatrick, 35 F.4th at 1193.

25      While Plaintiff argues that the records not discussed contain additional limitations of his

26   activities of daily living that were not addressed (Mot. 14), the ALJ did consider that Plaintiff had

27   a fractured femur which was expected to heal in less than twelve months.  (AR 23.)  In addressing

28   Plaintiff's RFC, the ALJ also considered that at the February 24, 2022 hearing, Plaintiff testified

1  that he fractured his ankle when he fell off a ladder while getting decorations out of the attic and

2  that his left ankle continues to swell occasionally and he continues to experience left leg numbness.

3  (AR 25, 51.)  Plaintiff further testified that the only lasting symptom from his fracture was that his

4  ankle feels like it is sprained all the time, and his physician told him the pain should subside.  (AR

5  51.)  The Court has reviewed the records for the time period and noted no probative evidence the

6  ALJ failed to discuss.  Generally, the records relate to dermatology visits, physical therapy visits

7  which the ALJ considered, treatment for bursitis of the left knee which the ALJ referenced in his

8  opinion, and treatment for his fractured ankle which the ALJ considered.

9  Plaintiff has not demonstrated that the ALJ failed to address any probative evidence in the

10  medical record; and the Court recommends that Plaintiff's motion for summary judgment be denied

11  on this ground.

12  **C.     This Action Should be Remanded for Further Proceedings**

13  Plaintiff seeks remand for payment of benefits or, in the alternative, a remand for further

14  proceedings.  Plaintiff argues that the ALJ failed to provide legally sufficient reasons to reject his

15  evidence, there are no outstanding issues to be resolved before a disability determination can be

16  made, and it is clear from the record that the ALJ would be required to find Plaintiff disabled as his

17  need for additional breaks makes him unemployable.  (Mot. 15.)

18  Defendant counters that, even if the ALJ erred, remand for payment of benefits would not be

19  appropriate on this record.  (Opp. 10.)  Defendant argues that outstanding issues remain, even if the

20  ALJ improperly rejected Plaintiff's symptom testimony.  Defendant contends that there is a large

21  spectrum between the ALJ's RFC regarding changing positions and the hypothetical of the need for

22  additional breaks.  Further, Defendant asserts that the record does not establish disability and there

23  is an actual serious doubt as to whether Plaintiff is disabled.  (Opp. 11.)  The Court agrees that

24  remand for further administrative proceedings is appropriate.

25  The ordinary remand rule provides that when "the record before the agency does not support

26  the agency action, ... the agency has not considered all relevant factors, or ... the reviewing court

27  simply cannot evaluate the challenged agency action on the basis of the record before it, the proper

28  course, except in rare circumstances, is to remand to the agency for additional investigation or

1   explanation." Treichler, 775 F.3d at 1099.  This applies equally in Social Security cases.  Id.  Under

2   the Social Security Act "courts are empowered to affirm, modify, or reverse a decision by the

3   Commissioner '*with or without* remanding the cause for a rehearing.' "  Garrison, 759 F.3d at 1019

4   (emphasis in original) (quoting 42 U.S.C. § 405(g)).  The decision to remand for benefits is

5   discretionary.  Treichler, 775 F.3d at 1100.  In Social Security cases, courts generally remand with

6   instructions to calculate and award benefits when it is clear from the record that the claimant is

7   entitled to benefits.  Garrison, 759 F.3d at 1019.

8       The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which must

9   be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits:

10  (1) the record has been fully developed and further administrative proceedings would serve no useful

11  purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether

12  claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited

13  as true, the ALJ would be required to find the claimant disabled on remand."  Garrison, 759 F.3d at

14  1020.  The credit as true doctrine allows "flexibility" which "is properly understood as requiring

15  courts to remand for further proceedings when, even though all conditions of the credit-as-true rule

16  are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact,

17  disabled.  Id. at 1021.

18      Here, the only error found is that the ALJ failed to articulate clear and convincing reasons to

19  reject Plaintiff's symptom testimony.  "[A] reviewing court is not required to credit claimants'

20  allegations regarding the extent of their impairments as true merely because the ALJ made a legal

21  error in discrediting their testimony."  Brown-Hunter, 806 F.3d at 495 (quoting Treichler, 775 F.3d

22  at 1106.  Further, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in

23  fact, disabled, no matter how egregious the ALJ's errors may be."  Strauss v. Comm'r of the Soc.

24  Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011).  Here, the record raises a serious question as to

25  whether Plaintiff is disabled for the reason stated by the ALJ in the opinion.

26      Initially, the medical record does demonstrate that Plaintiff had a successful transforaminal

27  lumbar interbody fusion L3-4, posterior spinal fusion L3-5 with internal fixation, and revision.  (AR

28  410.)  Plaintiff underwent physical therapy following surgery and confirmed that he had

improvements in his functional mobility.  (AR 515.)  This is further demonstrated by the extent of Plaintiff's functional abilities.  Despite his allegations of severe back pain which precludes him from working, Plaintiff is able to prepare meals, goes grocery shopping, drives a car, does laundry, showers, vacuums and does light housekeeping, run errands without assistance, climbs a ladder to the attic to retrieve boxes, and trims bushes for half an hour to an hour and requires a rest period before continuing.  (AR 43, 44, 45, 49, 51, 363-64.)  He can sit for fifteen minutes to an hour, walk two miles, and stand for a couple hours.  (AR 48, 364.)

Plaintiff also testified that his pain is made bearable with over-the-counter medication which he takes as needed.  (AR 362.)  Plaintiff would have to take more pain medication to get through a day of work and he is trying to avoid taking pain medication.  (AR 50.)

Finally, no physician has opined that Plaintiff is unable to work.  The agency physicians opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday.  He can occasionally climb ramps, stairs, ladders, ropes and scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl.  (AR 66-7, 82-3.)    Plaintiff's treating physician repeatedly spoke with Plaintiff about the possibility that he would need to find a different line of work, and released Plaintiff with the limitation that he not lift more than 75 pounds with period breaks from sitting and standing as needed.  (AR 613, 617, 621-22.)

For these reasons, the Court finds that remand for further proceedings is appropriate.  The Social Security regulations require the Commissioner to set forth a discussion of the evidence, and the reason or reasons upon which the decision is based.  42 U.S.C. § 405(b)(1)).  The ALJ is advised that the agency must explain its reasoning in order for the Court to be able to perform a meaningful review.  To meet the burden, the ALJ must "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony." Treichler, 775 F.3d at 1102 (quoting Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir.2001)). Accordingly, "[g]eneral findings are insufficient" for an ALJ to meet the burden of setting forth clear and convincing reasons to reject a claimant's testimony.  Treichler, 775 F.3d at 1102.  Upon remand, the ALJ should consider Plaintiff's symptom testimony in compliance with the regulations.

## V.

## CONCLUSION AND RECOMMENDATION

For the reasons discussed, the Court finds the ALJ did not provide specific, clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment be GRANTED;

2. Plaintiff's appeal from the decision of the Commissioner of Social Security be GRANTED; and

3. This matter be remanded back to the Commissioner of Social Security for further proceedings consistent with this recommendation.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 8, 2024**   _____

UNITED STATES MAGISTRATE JUDGE